**SOCIETY CREATED TO REDUCE URBAN BLIGHT (SCRUB), Mary Cawley Tracy, David Cohen, Powelton Village Civic Association, Center City Civic Association and Jack Minnis,**

v.

**ZONING BOARD OF ADJUSTMENT, City of Philadelphia, Amtrak National Railroad Passenger Corp., and Interstate Outdoor Advertising.**

**Appeal of Amtrak National Railroad Passenger Corp. and Interstate Outdoor Advertising.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2001.

Decided Dec. 27, 2001.

Stephen C. Eglin, Philadelphia, for appellants.

Samuel C. Stretton, West Chester, for appellees.

Before COLINS, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

COLINS, Judge.

Amtrak National Railroad Passenger Corporation and Interstate Outdoor Advertising appeal the order of the Court of Common Pleas of Philadelphia County reversing the grant of a variance that would permit Amtrak to erect an outdoor advertising sign on its property approximately 200 feet west of the eastbound lanes of the Schuylkill Expressway and approximately 670 feet south of Spring Garden Street, in a district zoned G 2 General Industrial.

In November 1999, Amtrak applied for a zoning permit to erect a freestanding, single-face, illuminated, non-accessory, outdoor advertising sign measuring 60 feet wide by 20 feet high to be placed at a height of 85 feet above grade. The sign would be placed adjacent to a two-story building in the railroad yard of its 30th Street Station property, between Spring Garden Street and the Vine Street exit of the Schuylkill Expressway. The sign would be back to back with an existing sign on the opposite end of the building. Amtrak currently uses the 120–acre property,[1] zoned G–2 General Industrial, for railroad and non-accessory advertising uses. The Department of Licenses & Inspections (L & I) denied the permit request on the ground that the sign's proposed height would far exceed the maximum height permitted under the zoning code and on the grounds that signs are prohibited within 660 feet of an ingress and/or egress ramp of the Ex-

pressway and only one sign support structure is permitted on the lot, whereas one non-accessory sign exists within 500 feet of the proposed sign and one or more other non-accessory signs already exist on the lot. L & I noted that the plan showed six existing signs on the lot.

Amtrak filed an appeal with the Zoning Board of Adjustment requesting a variance authorizing the proposed sign. At the hearing before the Board, Amtrak offered to remove two signs on the 30th Street Station property at 31st Street. After hearing evidence presented by both Amtrak and the objectors to the variance, the Board of Adjustment voted in favor of the variance. The Board concluded that strict enforcement of the zoning code would result in an unnecessary hardship to Amtrak in light of the federal mandate that it raise revenue and Amtrak's leasing of the existing rail lines; that denying the variance would unnecessarily prevent Amtrak from using the property without imposing on the existing railroad activity; and that Amtrak had persuasively established that the proposed sign would not negatively impact the public health, safety, and welfare. On appeal, the trial court, without taking evidence, reversed. After examining the applicable sections of the zoning code and the applicant's burden of proof, the court concluded that Amtrak had failed to demonstrate either the necessary hardship or lack of negative impact on the public interest.

■ Before Commonwealth Court, Amtrak and Interstate Outdoor Advertising argue that the Board properly concluded that Amtrak demonstrated that it would suffer unnecessary hardship if the variance were not granted and that granting the

---

**1.** Although Board Finding of Fact No. 5 indicates that the property measures 12 acres, Mr. Day testified that the railroad yard is approximately 120 acres and that the part of the area represented on the site map consisted of 12 to 20 acres. (12–30–99 Notes of Testimony, pp. 30, 34.)

variance would not harm the public interest. Because the court of common pleas reversed the Board without taking additional evidence, our review is limited to determining whether the Board abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence of record. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment of City of Pittsburgh*, 145 Pa.Cmwlth. 503, 604 A.2d 298 (1992), *petition for allowance of appeal denied*, 538 Pa. 618, 645 A.2d 1320 (1994).

■ Non-accessory outdoor advertising signs are permitted in a G–2 General Industrial district as permitted in § 14–1604 of the zoning code. Phila. Zoning Code (Zoning Code) § 14–508(1)(aa). The City of Philadelphia added Section 14–1604 to the zoning code in 1991 in order to control outdoor advertising citywide by establishing prohibited areas; spacing and distance requirements; and height, area, face, and illumination regulations. Zoning Code § 14–1604; *SCRUB v. Zoning Board of Adjustment*, 772 A.2d 1040 (Pa.Cmwlth. 2001) (*Conrail Appeal* ). Pertinent to this appeal, Section 14–1604(2) of the zoning code prohibits outdoor advertising and non-accessory signs within 500 feet of another such sign; Section 14–1604(6)(a) provides that the bottom edge of any outdoor advertising or non-accessory sign shall not be more than 25 feet above the road surface from which its advertising message is visible; Section 14–1604(7) prohibits more than one sign support structure on any lot, with no more than two sign faces or advertising messages; and Section 14–1604(9)(b) prohibits outdoor advertising and non-accessory signs within 660 feet of an ingress and/or egress ramp of the Schuylkill Expressway.

■ In *SCRUB (Conrail Appeal)*, 772 A.2d at 1044, in which we addressed the identical issues raised in the instant appeal, we stated,

The standards for granting a variance in Philadelphia are well settled. The party seeking a variance bears the burden of proving that an unnecessary burden will arise if the variance is not granted and that granting the variance will not be contrary to the public interest. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). The unnecessary hardship must arise from "the particular *physical* surrounding, shape, or topographical conditions of the specific structure or land involved." Section 14–1802(1)(a) of the Zoning Code (emphasis added). See also Section 910.2(a)(1) of the Pennsylvania Municipalities Planning Code (MPC) (requiring that a zoning board find unnecessary hardship due to "physical circumstances of conditions" before granting a variance). Furthermore, the unnecessary hardship must be unique to the property rather that a hardship arising from the impact of zoning regulations on an entire district. *Valley View Civic Association.*

Evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance absent evidence that the property will be rendered valueless. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *SPC Company, Inc. v. Zoning Board of Philadelphia*, 773 A.2d 209 (Pa.Cmwlth.2001).

■ Variances from the requirements of Section 14–1604 are not dimensional because a dimensional variance contemplates only a reasonable adjustment from area and space requirements in order to develop a *permitted* use, and Section 14–1604 prohibits the use of property for outdoor advertising unless its requirements are met. *SCRUB (Conrail Appeal)*, 772 A.2d at 1045. First, the requirements of only one sign support structure on any lot and the prohibition of outdoor advertising

and non-accessory signs within 660 feet of an ingress and/or egress ramp of the Schuylkill Expressway cannot be reasonably be characterized as dimensional. Second, "even under the more relaxed Hertzberg [2] standards, which allow courts to consider multiple factors in determining if a dimensional variance is justified, the zoning board nonetheless must find some unnecessary hardship arising from the unique physical circumstances or conditions of the lot before the zoning board may grant a variance." *Id.* (footnote added); *SCRUB v. Zoning Board of Adjustment,* 771 A.2d 874 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 786 A.2d 992 (2001).

In this case, Amtrak's evidence on the issue of unnecessary hardship consists of the testimony of professional engineer Albert Tantala and planning consultant Norman Day. Mr. Tantala testified that the presence of an elevated rail line, the use of the property as a railroad yard, and the steep grade descending from 31st Street pose limitations on the development of the property.[3] Mr. Day testified that the property is currently used for a variety of railroad-related uses, with Amtrak tracks on the eastern side, Septa tracks on the western side, and fourteen odd buildings in the middle that are used for maintenance and storage and include a 20– to 25–story,

former butter plant. (N.T., pp. 34–35.) Existing non-accessory signs include three along the Expressway, a cluster of signs at 31st Street, three back-to-back signs north along the Expressway, and the sign that would be back-to-back with the proposed sign. (N.T., p. 36.) On this issue, Robert Orlando of Transportation Displays Incorporated, Amtrak's agent for development of advertising locations on its industrial properties, testified, "Amtrak is on a Federal mandate to become self-sufficient. We are trying to maximize everything we can in terms of revenue." Architect Gray Smith testified solely on the issue of the proposed sign's visual impact.

Given the evidence, Amtrak failed to demonstrate either that the property will be rendered valueless, or, under the *Hertzberg* standard, that denying the variance would result in economic detriment or financial hardship. Amtrak introduced no evidence on the issue of unnecessary hardship other than the statements of Mr. Day and Mr. Tantala that the parcel's grade and the presence of high rail line created one. Amtrak failed to introduce any specific evidence regarding the nature of the hardship, the potential economic benefit to be gained if the variance were granted, or its plans to address the federal mandate to increase the profitability of its property. Amtrak's willingness to remove two signs at 31st Street [4] would seem to be contrary

**2.** *Hertzberg v. Zoning Board of Adjustment of Pittsburgh,* 554 Pa. 249, 721 A.2d 43 (1998), holds that in determining whether unnecessary hardship has been established, courts may consider multiple factors, including economic detriment to the applicant if the variance is denied, the financial hardship created in bringing the permitted use into strict compliance with the zoning, and the characteristics of the surrounding neighborhood.

**3.** More accurately, Mr. Tantala answered in the affirmative to Amtrak counsel's question,

Is it your testimony, based on your reports and the other information that you provid-

ed, that the location of this sign in the middle of the yard would not impede railroad activities and would help alleviate the hardship caused by the high line, change in the grade and the other physical features caused by the railroad activity?

(Notes of testimony, p. 20.) He later clarified, "That was my comment that because of the elevated trestle, because of the use of the current lot as a railroad yard and because of this open area, that was the hardship in which a sign can be placed." (N.T. p. 29.)

**4.** Section 14–1604(10)(a) of the zoning ordinance provides, "For each outdoor advertising and non-accessory sign erected in con-

to that financial imperative, but again, the record is devoid of financial evidence.

∎ As for whether the proposed use would negatively impact the public interest, the trial court concluded that Amtrak failed to meet its burden on this issue given the City Council's legislative findings that outdoor advertising and non-accessory signs contribute to visual clutter, detract from the beauty of the City, contribute to the appearance of deterioration, and thereby impact economic viability. We disagree. Mr. Day testified that given the nature of the site as an industrial landscape, an additional outdoor advertising sign would have no impact on the surrounding area, that the proposed sign would not be visible from most locations, that the view of the sign from any of the closest high-rise residential buildings is over a significant distance from one-quarter to one-half a mile, and that from 31st Street only the back of the sign would be visible. To accept City Council's findings as conclusive on this issue would be to preclude a variance for the erection of an outdoor advertising or non-accessory advertising sign.

Accordingly, because Amtrak failed to meets its burden of proving an unnecessary hardship if the variance were not granted, the order of the trial court is affirmed.

### ORDER

AND NOW, this 27th day of December 2001, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

formance with these provisions, an existing sign or signs encompassing equal or greater

sign area shall be removed[.]"