**RICE FAMILY TRUST, Appellant**

v.

**CITY OF ST. MARYS.**

Commonwealth Court of Pennsylvania.

Argued March 15, 2012.

Decided Sept. 7, 2012.

914

Thomas G. Wagner, St. Marys, for appellant.

Anthony J. Alfieri, Smethport, for appellee.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Rice Family Trust (Trust) appeals an order of the Court of Common Pleas of the 59th Judicial District (Elk County Branch) (trial court) denying its land use appeal. The Trust argues that the trial court erred in denying its request for a curative amendment to the City of St. Marys' Zoning Ordinance,[1] which the

---

1. St. Marys, Pa., Ordinance 227, City of St. Marys Official Zoning Ordinance of 2005 (De-

Trust needs to use its property for office and apartment units. For the reasons that follow, we affirm.

The Trust's property (Property) is located at 188 Center Street in St. Marys. The Property consists of a large house, approximately 6,000 square feet in size, and an apartment above a detached garage. The house was originally built as a single-family home but was later converted into several apartment units and an office. The apartments could be configured into three or four units, depending on the preference of the renters.

In April 2010, the Trust purchased the Property in a mortgage foreclosure proceeding to protect its position as a third mortgage lienholder. Prior to its acquisition by the Trust, the Property had undergone a series of different uses, and the applicable zoning ordinances had been revised. The relevant history of those changes follows.

As of 1983, a chiropractor owned the Property, where he lived with his family and operated his chiropractic practice. The 1977 Zoning Ordinance permitted homeowners to set up a home medical office but no other kind of home professional office.[2] In 1983, Floyd Howell purchased the Property to use as his principal residence and an office for his public accounting firm, which had its main office elsewhere in St. Marys. The 1977 Zoning Ordinance did not permit Howell's public accounting office use.

In 1995, the newly-formed City of St. Marys enacted a new zoning ordinance, which placed the Property in the Residential Urban District. In that district single-family homes and duplexes were permitted but apartment buildings were not; professional offices, such as public accounting offices, were permitted by special exception. Howell continued to use the Property for his public accounting office, albeit without a zoning permit.

In 1996, Howell converted the house into four apartments and office space. From 1996 until 2009, Howell lived in one of the apartments and rented out the others.

In 2006, the City enacted the current Zoning Ordinance (2005 Zoning Ordinance). As did the 1995 Zoning Ordinance, the 2005 Zoning Ordinance limits the Residential Urban District to single-family detached houses and duplexes. It prohibits professional offices. Offices are permitted for properties abutting arterial streets, but the Property is not on an arterial street as defined by the 2005 Zoning Ordinance.

In 2009, Howell relocated the main office of his public accounting firm to the Property. The City denied his application for a zoning permit. He appealed, requesting a variance, and that appeal is currently pending.

After the Trust purchased the Property, it submitted a curative amendment to the St. Marys City Council, seeking to have the Property rezoned from Residential Urban to Central Business. The Central Business District permits, *inter alia*, municipal services, banks, medical and dental clinics, professional offices, restaurants and taverns, and retail sales. Because City Council did not act upon the amendment, it was deemed denied under Section

---

cember 18, 2006) (2005 ZONING ORDINANCE).

**2.** The 1977 Zoning Ordinance permitted "[a] professional office of a doctor of medicine, optometrist, osteopath, dentist and chiropractor using a dwelling house for his sole use for consultation and treatment, the exterior of the dwelling to be and reamin [sic] residential in design providing, however, that there shall be provided adequate space for off-street parking for not less than six (6) vehicles." Reproduced Record at 104a (R.R.——).

916.1(f)(1) of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10916.1(f)(1).[3] The Trust appealed to the trial court, which conducted a hearing.

At that hearing, Howell testified about his knowledge of and experience with residential and commercial properties in the St. Marys area. He is not a licensed real estate broker. Directly across the street from the Property, in the Residential Flexible District,[4] is a multilevel apartment building. Next door is an American Legion Club in the Central Business District.[5] On the other side of the Property is a residence, and behind the Property is a single-family home. Howell conceded that the house on the Property could be converted into a duplex but that "it would [not] be the best economic [use]." Notes of Testimony, 1/11/11, at 51 (N.T. ——); R.R. 62a.

Timothy Rice testified that the Trust sought the curative amendment "to use [the Property] as an economic return as best as [the Trust] can for the real estate market to return." N.T. 16; R.R. 27a. The Trust wanted to continue to use the house on the Property as an office and four apartments. Rice did not know if it would be economically feasible to rent the house as a single-family home or a duplex because of its large size.

The City called Matthew Pfeufer, a St. Marys zoning officer, to testify. Pfeufer testified that he participated in the adoption of the 2005 Zoning Ordinance. He was responsible for ensuring that the ordinance was properly advertised and that required public hearings were held. He stated that he did not know why professional office uses were excluded from the 2005 Zoning Ordinance.

The trial court denied the Trust's appeal, holding that the 2005 Zoning Ordinance was not arbitrary or confiscatory and, thus, a curative amendment was not warranted. The trial court found that the Property's placement in the Residential Urban District was consistent with surrounding uses, which include residences on two sides. The trial court also rejected the Trust's claims that the historical use of the Property as four apartment units and the changing character of the neighborhood from residential to commercial made the zoning arbitrary or confiscatory. The trial court found that the zoning of the Property was "a natural extension of the Residential–Urban District to the west and north" of the Property. Trial Court Opinion at 5; R.R. 156a. Finally, the trial court rejected the Trust's argument that the property could not be used in an economically feasible manner in the Residential Urban District. It found the Trust's evidence on this point unpersuasive because the Trust had not explored alternative uses, such as turning the Property into a rental duplex.

---

3. Section 916.1 of the Municipalities Planning Code states, in relevant part,

> (f) The challenge shall be deemed denied when:
> (1) the zoning hearing board or governing body, as the case may be, fails to commence the hearing within the time limits set forth in subsection (d)[.]

53 P.S. § 10916.1(f)(1). Section 916.1 was added by the Act of December 21, 1988, P.L. 1329.

4. The Residential Flexible District permitted uses include, *inter alia*, single-family dwellings, duplexes, townhouses, multi-family dwellings, municipal services, schools, and churches.

5. The Central Business District permitted uses include, *inter alia*, municipal services, banks, medical and dental clinics, professional offices, restaurants and taverns, and retail sales.

■ On appeal,[6] the Trust raises two issues. It argues, first, that the 2005 Zoning Ordinance is arbitrary and unreasonable because it excludes the uses currently and historically conducted on the premises. Second, it argues that the 2005 Zoning Ordinance is confiscatory because it prohibits economically feasible uses for the Property.

■ In its first issue, the Trust argues that the 2005 Zoning Ordinance is arbitrary and unreasonable with respect to the Property because it ignores the historic use of the Property and the commercial nature of other nearby properties, such as the American Legion Club next door and the apartment building across the street. It notes that Howell used the Property for many years as a public accounting office without objection from neighbors. The Trust further notes that the character of the neighborhood has become increasingly commercial, which belies the 2005 Zoning Ordinance's stated purpose to "permit a continued development pattern that has evolved in these older existing neighborhoods." 2005 ZONING ORDINANCE § 202.1; R.R. 127a.

The City responds that the Trust's real goal is to maximize the Property's economic potential, which is not a basis for a curative amendment. The chiropractor's office was permitted under the 1977 Zoning Ordinance, but Howell's public accounting office was not. Howell's testimony did not establish that his use of the Property as an office was a nonconforming preexisting and permitted use. Further, the fact that nearby properties are being used for commercial purposes is simply the result of the Property being located on the

boundary between a commercial zoning and residential district, which does not invalidate the choice to place the Property into one of those two districts.

■ A curative amendment will be granted where necessary to make a zoning ordinance valid. *Briar Meadows Development, Inc. v. South Centre Township Board of Supervisors*, 2 A.3d 1303, 1305 (Pa.Cmwlth.2010). A zoning ordinance is presumed valid, and a challenger to the validity of the ordinance has the "heavy burden of establishing its invalidity." *Kirk v. Zoning Hearing Board of Honey Brook Township*, 713 A.2d 1226, 1229 (Pa. Cmwlth.1998). The challenger must show that the zoning ordinance is unreasonable, arbitrary or not substantially related to the police power interest. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 14, 820 A.2d 143, 150–51 (2002). In considering whether a zoning ordinance is valid, courts defer to the legislative body. *Kirk*, 713 A.2d at 1229. A zoning ordinance's consistency with the stated purpose of a particular zoning district is a significant factor in determining its reasonableness. *Id.*

■ The stated purpose of the Residential Urban District is to preserve the residential character of the neighborhood. Section 202.1 of the 2005 Zoning Ordinance states:

> The purpose of [the Residential Urban District] is to reflect and permit a continued development pattern that has evolved in these older existing neighborhoods. Characteristics of this [District] include smaller and narrower lot sizes with detached and attached dwellings served by public utilities. Uses permit-

---

6. Our scope of review in a case where the trial court took additional evidence is to determine whether the trial court abused its discretion or committed an error of law. *Metzger v. Zoning Hearing Board of Township*

*of Warrington*, 85 Pa.Cmwlth. 301, 481 A.2d 1234, 1236 (1984). Our review of questions of law is plenary. *Tennyson v. Zoning Hearing Board of West Bradford Township*, 952 A.2d 739, 744 (Pa.Cmwlth.2008).

ted within this [District] are limited to complement these existing neighborhoods, with accessory uses that will not detract from the residential character. 2005 ZONING ORDINANCE § 202.1; R.R. 125a.[7] To protect the residential character of the neighborhood, the City Council made the legislative judgment that prohibiting professional offices would discourage commercial development that detracts from the "residential character" of the neighborhood. Even were the Court to agree that the best use of the Property is as a mixed professional office and four-unit apartment building, we may not substitute our judgment for that of the City council. Courts do not function as a super zoning hearing board or a planning commission of last resort. *Kirk*, 713 A.2d at 1231.

■ The fact that neighboring properties have been put to commercial use does not make the 2005 Zoning Ordinance arbitrary or unreasonable. Zoning district lines "must be fixed somewhere." *Di Santo v. Zoning Board of Adjustment of Lower Merion Township*, 410 Pa. 331, 335, 189 A.2d 135, 137 (1963). District lines drawn in the past do not control the future place-ment of zoning district lines. If so, it would be impossible to draw new zoning districts. Only "where it is obvious that the classification has no relation to public health, safety, morals or general welfare," will the court disturb a legislative judgment. *Id.* at 334, 189 A.2d at 137 (emphasis deleted).

The Trust's evidence did not show that the 2005 Zoning Ordinance, as applied to the Property, is arbitrary, unreasonable, or inconsistent with the stated purpose of the Residential Urban Zoning District. The Property's prior uses are not dispositive and, in any case, inconclusive. The Property has been used as an apartment building and a professional office, but it has also been used as a single-family house.

■ In its second issue, the Trust argues that the 2005 Zoning Ordinance is confiscatory because the Property is not suitable for use as a single-family home or duplex. In support, the Trust relies on Howell's testimony that described the Property's use as an apartment building, public accounting office and a chiroprac-

---

7. Section 202 of the 2005 Zoning Ordinance lists the uses for the Residential Urban District as follows:

*Permitted Uses*
1. Single-family detached dwellings;
2. Duplexes;
3. Forestry uses, subject to Section 326 of this Article;
4. Municipal services, parks and playgrounds;
5. Public and private schools;
6. Churches, cemeteries and related uses;
7. Public utilities structures;
8. No-impact home based businesses; and,
9. Accessory uses customarily incidental and secondary to the above permitted uses, including but not limited to no-impact home-based businesses and accessory day care uses, as defined herein. No detached accessory building shall contain more than nine hundred (900) square feet of total floor area unless a special exception is granted in accordance with Section 401 of this Ordinance and further provided that no more than one accessory building shall be permitted.
*Special Exception Uses* (See Section 604.3)
1. Accessory detached structures exceeding 900 square feet of total floor area (see Section 401);
2. Accessory dwelling units (see Section 402);
3. Boarding houses (see Section 413);
4. Bed and breakfasts (see Section 411);
5. Family day-care facilities (see Section 426);
6. Home occupations (see Section 434);
7. Office and retail conversions (see Section 445); and,
8. Two-family conversions (see Section 456).
2005 ZONING ORDINANCE §§ 202.2–202.3; R.R. 125a.

tor's office. Howell also testified that because of the large size of the building, *i.e.*, approximately 6,000 square feet, it would be impossible to obtain a reasonable rent if it was limited to one or two dwelling units, making the 2005 Zoning Ordinance confiscatory.

In response, the City points out that Howell used the property as a single-family home from 1983 to 1996. It challenges the Trust's characterization of Howell's testimony that it is "impossible" to obtain fair rent by limiting the Property to two apartments. At this point Howell lives in Florida, making his observation about the current market in St. Marys less reliable. The City notes that Rice testified that he hoped he could get a reasonable return from using the Property as a duplex. The City argues that the Trust did not sustain its burden of showing that the 2005 Zoning Ordinance is confiscatory.

 To establish that a zoning ordinance is confiscatory, the challenger "must prove that the land has no value or only distressed value, *i.e.*, is 'valueless,' as a result of the regulation." *Laurel Point Associates v. Susquehanna Township Zoning Hearing Board,* 887 A.2d 796, 801 (Pa.Cmwlth.2005). This burden is particularly heavy where a commercial use is sought within a residential district. *Shelley v. Zoning Hearing Board of Carlisle,* 71 Pa.Cmwlth. 153, 454 A.2d 664, 666 (1983). The challenger must demonstrate one of three things: (1) physical features prevent the use of the property as permitted under the ordinance; (2) conforming the property to a permitted use can be done only at a prohibitive expense; or (3) the property has no value under any of the permitted uses. *Laurel Point Associates,* 887 A.2d at 802.

The Trust does not argue that the Property's physical features prevent its use in the manner zoned or that it can be done only at prohibitive expense. Instead, the Trust argues that the Property is valueless under current zoning standards, relying on the testimony of Rice and Howell.

The trial court found that Rice's and Howell's testimony on the economic viability of the Property was "equivocal and unpersuasive." Trial Court Opinion at 7; R.R. 158a. Rice testified that he had never explored the costs of using the Property as a duplex or as a single-family residence. Howell used the Property as a single-family residence for many years. Howell testified that renting the Property as a duplex would not maximize its economic potential, but "[a]n ordinance is not invalid merely because it does not permit the most lucrative use of property." *Keinath v. Township of Edgmont,* 964 A.2d 458, 463 (Pa. Cmwlth.), *appeal denied,* 603 Pa. 697, 983 A.2d 730 (2009). In sum, the Trust's evidence did not prove that the Property has been rendered valueless and, thus, its claim that the 2005 Zoning Ordinance is confiscatory must fail.

For these reasons, we affirm the trial court.

### ORDER

AND NOW, this 7th day of September, 2012, the order of the Court of Common Pleas of the 59th Judicial District, Elk County Branch, dated June 30, 2011, in the above-captioned matter is hereby AFFIRMED.