IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dale DeAngelo and Lesley DeAngelo, :
                              Appellants :
                                        :
              v.                        : No. 770 C.D. 2018
                                        : Argued: February 11, 2019
North Strabane Township                 :
Zoning Hearing Board                    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                           FILED: April 17, 2019

         Dale DeAngelo and Lesley DeAngelo (Landowners) appeal an order of
the Court of Common Pleas of Washington County (trial court) that affirmed the
decision of the Zoning Hearing Board of North Strabane Township (Zoning Board)
to deny their validity challenge to the zoning ordinance as well as their variance
application.  Landowners seek to build a medical clinic in a residential zoning
district.  For the following reasons, we affirm in part and vacate and remand in part.

**Background**

         Landowners own a two-acre property in the R-3 High Density
Residential Zoning District located in North Strabane Township (Township).  The
North Strabane Township Zoning Ordinance (Zoning Ordinance)[1] allows a medical
clinic as a conditional use in an R-3 District as long as it is "established in
conjunction with, part of and adjacent to an assisted living facility, independent

---

[1] NORTH STRABANE TOWNSHIP MUNICIPAL CODE, Chapter 27, *as amended*, added by Zoning
Ordinance No. 314, July 25, 2006.

living facility, life care community or nursing home." ZONING ORDINANCE §1303.34(B).

On July 13, 2017, Landowners challenged Section 1303.34(B) of the Zoning Ordinance as impermissibly restrictive. In their application to the Zoning Board, Landowners stated, in pertinent part, as follows:

> Requirements that medical clinic in an R-3 Zoning District be affiliated with nursing home, assisted living facility and the like. The requirement constitutes exclusionary or restrictive zoning and is therefore unenforceable. [Landowners] cannot develop property desired due to restrictive language of [the Zoning] Ordinance. Applicable Zoning Ordinance language also discriminatorily restrictive. Language creates hardship not of Landowners making.

Reproduced Record at 20a (R.R. __). The Zoning Board held a public hearing on September 6, 2017.

At the hearing, Landowners asserted that Section 1303.34(B) constitutes "de facto exclusionary and restrictive zoning" and requested that the Zoning Board interpret Section 1303.34(B) as "invalid, illegal, [or] unenforceable." Hearing Transcript, 9/6/2017, at 8; R.R. 52a. In support, Landowners pointed out that the requirement that a medical clinic be allowed only in conjunction with a life care community conflicted with the Zoning Ordinance's definition of a "medical clinic," which states:

> Any establishment, including mobile diagnostic units, where persons receive medical, dental, chiropractic and surgical diagnosis, treatment and counseling under the care of a group of licensed medical doctors and dentists and their supporting staff, where said patients are not provided with board or room or kept overnight on the premises.

2

ZONING ORDINANCE §201. Landowners asserted that it is impossible to develop a medical clinic that complies with both Section 201 and Section 1303.34(B). Further, medical clinics located in the C-1 Highway Commercial and C-2 Regional Commercial Districts are not subject to the restrictions set forth in Section 1303.34(B). All these "inconsistencies," according to Landowners, rendered the requirements in Section 1303.34(B) invalid and unenforceable. Hearing Transcript at 15; R.R. 59a.

Landowners also challenged the extensive acreage for a medical clinic in the R-3 District required by Section 1303.34(B). A life care community requires 20 acres, and an assisted or independent living facility requires five acres. ZONING ORDINANCE §§1303.5(A), 1303.29(A). Landowners asserted that there was no parcel in the R-3 District large enough to accommodate a clinic and facility as required in Section 1303.34(B). Landowners maintained that Section 1303.34(B) is *de facto* exclusionary to the extent it precludes a stand-alone medical clinic in an R-3 District.

Alternatively, Landowners sought a variance,[2] asserting an unnecessary hardship created by the "restrictive and [] unenforceable nature of the language in and associated with an R-3 [District]." Hearing Transcript at 20; R.R. 64a. When the Zoning Board questioned Landowners about the type of facility they proposed, they responded that "at this time there isn't anything definite. We would do whatever to fit in." Hearing Transcript at 12; R.R. 56a.

---

[2] Landowners explained at the hearing that they had filed an application for a conditional use with the Board of Supervisors. The solicitor advised them that the Board of Supervisors would deny their application for failing to meet the requirements of Section 1303.34(B). The solicitor advised Landowners to "go to the Zoning Hearing Board first." Hearing Transcript at 13; R.R. 57a.

The Zoning Board did not take evidence at the hearing, explaining that it would decide only "whether the [O]rdinance needs an interpretation":

> It's a strictly legal issue. And I don't see any need to offer any testimony. I want to keep this thing as simple as possible…. We're not here to say whether [Landowners] can do it or not. We're here to say whether the [O]rdinance needs an interpretation in our mind to correct a deficiency that [Landowners] say[] exists in our [O]rdinance. And which allow [them] to put a medical clinic in a R-3 [D]istrict. [They are] saying what the Supervisors did in requiring it to be attached to another type of facility is improper…. It's the legal issue involving whether the [O]rdinance is subject to interpretation. That's the issue in this case and that's what we'll decide.

Hearing Transcript at 30-31; R.R. 74a-75a. The Zoning Board continued the hearing to October 4, 2017, to allow Landowners to submit a legal memorandum, which they did, reiterating that the Zoning Ordinance is exclusionary and that construction of a medical clinic consistent with Section 1303.34(B) would cost "additional millions of dollars." R.R. 95a.

On October 4, 2017, the Zoning Board voted to uphold the Zoning Ordinance and deny Landowners' request for a variance. The Zoning Board concluded that the Zoning Ordinance is not exclusionary, noting that stand-alone medical clinics are permitted in C-1 and C-2 Districts.

In denying Landowners' request for a variance, the Zoning Board made the following findings of fact:

> 4. The proposed variance is for a use variance.
>
> ***
>
> 6. [Landowners] appeared with counsel and offered testimony and exhibits.
>
> ***

4

9. [Landowners] wish to use the property for a medical clinic.

10. [Landowners] do not plan to establish the clinic in conjunction with, part of and adjacent to an assisted living facility, independent living facility, life care community or nursing home.

Board Decision at 2-3; Findings of Fact ¶¶4, 6, 9, 10. The Zoning Board held that Landowners did not show an unnecessary hardship.

Landowners appealed to the trial court, challenging the Zoning Ordinance conditions attached to the medical clinic in an R-3 District as so restrictive as to constitute *de facto* exclusionary zoning. Landowners further argued that the Zoning Board denied them a full and fair opportunity to make their case for a variance.

In a decision of May 10, 2018, the trial court affirmed the Zoning Board's decision. It concluded that the Zoning Ordinance is not *de jure* exclusionary because it permits a medical clinic as a conditional use in an R-3 District, and it permits stand-alone medical clinics in the C-1 and C-2 Districts. As to *de facto* exclusion, the trial court held that Landowners failed to prove that the Zoning Ordinance effectively excludes a legitimate use. The trial court rejected Landowners' claim that no lot in the R-3 District has enough acreage to accommodate a medical clinic and affiliated facility, noting that a nursing home requires only two acres.

As to Landowners' argument that the Zoning Board denied them a full and fair opportunity to present their case for a variance, the trial court observed that Landowners were given two hearings and an opportunity to submit a memorandum. This satisfied due process. Landowners did not prove any of the requirements for a variance, which requires more than mere economic hardship.

5

**Appeal**

Landowners have appealed to this Court, and they raise two issues for our review.[3] First, they argue that the trial court erred, asserting that the conditions for a medical clinic in an R-3 District constitute *de facto* exclusionary zoning. Second, they argue that the Zoning Board denied them a full and fair opportunity to present their request for a variance. We address these issues *seriatim*.

## I. Validity Challenge to the Zoning Ordinance

In their first issue, Landowners offer several arguments in support of their contention that the conditions for a medical clinic in an R-3 District constitute *de facto* exclusionary zoning. Requiring a medical clinic to "be established in conjunction with, part of and adjacent to an assisted living facility, independent living facility, life care community or nursing home" precludes mobile diagnostic units, which are not permanent structures. ZONING ORDINANCE §1303.34(B). Landowners argue that no property in the R-3 District is large enough to accommodate a clinic and assisted living facility, and this makes Section 1303.34(B) of the Zoning Ordinance exclusionary.[4] Further, the Zoning Board did not address the "improper distinction" between stand-alone medical clinics that are permitted in C-1 and C-2 Districts without the Section 1303.34(B) condition. Landowners Brief at 9. Landowners maintain that the conditions in Section 1303.34(B) are manifestly

---

[3] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the Zoning Board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id*. at 640. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

[4] The minimum lot size for a medical clinic is two acres. By contrast, a life care community requires 20 acres, and an assisted or independent living facility requires five acres. Zoning Ordinance §§1303.5(A), 1303.29(A).

6

unreasonable and effectively preclude a medical clinic in the R-3 District, despite its purported authorization.

A zoning ordinance enjoys a presumption of constitutionality and validity. The challenging party has the "heavy burden of establishing its invalidity." *Kirk v. Zoning Hearing Board of Honey Brook Township*, 713 A.2d 1226, 1229 (Pa. Cmwlth. 1998). The challenger must show that the zoning ordinance is unreasonable, arbitrary or not substantially related to the police power interest the zoning ordinance purports to serve. *Hanson Aggregates Pennsylvania, Inc. v. College Township Council*, 911 A.2d 592, 595 (Pa. Cmwlth. 2006). A *de jure* exclusion exists where a zoning ordinance, on its face, prohibits a legitimate use. A *de facto* exclusion exists where an ordinance purports to allow a use but, when applied, in actuality prohibits the use throughout the municipality. *In re Bartkowski Investment Group, Inc*., 106 A.3d 230, 238 (Pa. Cmwlth. 2014). Once the challenger meets this burden, the municipality must show that the zoning ordinance bears a substantial relationship to the public health, safety, and welfare. *Hanson Aggregates Pennsylvania*, 911 A.2d at 595.

Landowners argue that the requirements set forth in Section 1303.34(B) of the Zoning Ordinance preclude a stand-alone medical clinic in an R-3 District. This is correct. Section 801 of the Zoning Ordinance states in pertinent part:

> In the R-3 High-Density Residential District, only the following uses are authorized:
>
> ***
>
> B. Conditional uses:
>
>   (1) Principal uses:
>
>     (a) Active recreation, low-impact, subject to §1303, Subsection 2.

7

> (b) Assisted-living or independent living facility, subject to §1303, Subsection 5.
>
> (c) *Clinic-medical, subject to §1303.34.*
>
> (d) Life-care community, subject to §1303, Subsection 29.
>
> (e) Nursing home, subject to §1303, Subsection 34.
>
> \*\*\*

ZONING ORDINANCE §801 (emphasis added). In turn, Section 1303.34 provides that

> uses that are listed in any zoning district as a conditional use or use by special exception shall comply with the applicable standards and criteria specified below for that use.
>
> \*\*\*
>
> 34. Nursing home, hospital, hospice or medical clinic, subject to:
>
> \*\*\*
>
> B. In the R-3 District, a medical clinic shall only be established in conjunction with, part of and adjacent to an assisted living facility, independent living facility, life care community or nursing home.

ZONING ORDINANCE §1303.34(B). A stand-alone medical clinic is not a permitted use in an R-3 District, but it does not follow that the Zoning Ordinance is exclusionary.

A *de facto* exclusion exists where an ordinance "acts to prohibit the use throughout the municipality." *In re Bartkowski*, 106 A.3d at 238. The Zoning Ordinance does not prohibit medical clinics throughout the municipality; it permits stand-alone medical clinics in C-1 and C-2 Districts. ZONING ORDINANCE

8

§§901(A)(1)(ff), 1001(A)(1)(hh). Section 1303.34(B) does not effect a total prohibition of stand-alone medical clinics, and we reject Landowners' argument that the Zoning Ordinance is exclusionary.

Landowners next argue that Section 1303.34(B), which does not apply to medical clinics in C-1 and C-2 Districts, is arbitrary and unreasonable because it does not advance the purpose of the R-3 District. The Zoning Board responds that a zoning ordinance will not be found unconstitutional "merely because it deprives the owner of the most lucrative … uses" of property. Board Brief at 7 (quoting *KS Development Company, L.P. v. Lower Nazareth Township*, 149 A.3d 105, 116 (Pa. Cmwlth. 2016)).

In considering the validity of a zoning ordinance, "courts defer to the legislative body." *Rice Family Trust v. City of St. Marys*, 51 A.3d 913, 917 (Pa. Cmwlth. 2012). A zoning ordinance's consistency with the stated purpose of a particular zoning district is a significant factor in determining its reasonableness. *Id.* Only where it is obvious that the classification of a zoning district bears no relation to public health, safety, morals, or general welfare, will the court disturb the legislative judgment of the municipality. *Id.* at 918.

In *Rice Family Trust*, a property owner appealed the city's denial of its request for a curative amendment to the city's zoning ordinance to have the property rezoned from residential to central business. The property owner argued that the zoning ordinance was arbitrary and unreasonable because it excluded the historic uses of the premises, which included an accounting office. Further, the character of the neighborhood was becoming commercial, which belied the zoning ordinance's stated purpose to "permit a continued development pattern that has evolved in these older existing neighborhoods." *Id.* at 917.

9

The trial court denied the appeal, and this Court affirmed. In doing so, we observed that the stated purpose of the district was to preserve the residential character of the neighborhood and to limit the uses "to complement these existing neighborhoods, with accessory uses that will not detract from the residential character." *Id.* at 918. We stated:

> To protect the residential character of the neighborhood, the [city] made the legislative judgment that prohibiting professional offices would discourage commercial development that detracts from the "residential character" of the neighborhood. Even were the Court to agree that the best use of the Property is as a mixed professional office and four-unit apartment building, we may not substitute our judgment for that of the [city]. *Courts do not function as a super zoning hearing board or a planning commission of last resort.*

*Id*. (emphasis added).

Likewise, here, Landowners seek to place a commercial use within a residential district. The Zoning Ordinance states as follows:

> The purpose of [the R-3 High-Density Residential District] is to provide for medium-density single-family development and to provide multifamily housing opportunities in planned residential developments in areas served by public sewers and other public services and to provide for compatible public, semipublic and accessory uses as conditional uses or uses by special exception.

ZONING ORDINANCE §800. Section 1303.34(B) is consistent with the above-stated purpose because it limits a medical clinic to one associated with a facility that has a "residential character."

The Zoning Ordinance defines an assisted living facility as "[a] *residential building* or group of buildings designed to provide multifamily dwelling units for elderly or physically or mentally disabled persons who are independently mobile and are not in need of the level of service provided by a personal-care

10

home[.]" ZONING ORDINANCE §201 (emphasis added). An independent living facility is defined as "[a] *residential building* or group of buildings designed to provide housing for elderly or senior citizens who are independently mobile and not in need of supervision[.]" *Id*. (emphasis added). A life-care community is "[a] *residential development* that provides a continuum of care for the elderly[.]" *Id*. (emphasis added). A nursing home is "[a]n institution licensed by the Commonwealth for the care of human patients requiring skilled nursing or intermediate nursing care … but not including facilities for major surgery or care and treatment of drug or alcohol addiction." *Id*.

To provide for single-family and multifamily housing development with "compatible public, semipublic, and accessory uses as conditional uses," ZONING ORDINANCE §800, the Township made the legislative judgment to permit a medical clinic, a commercial use, in the R-3 District but only where it is established "in conjunction with, part of and adjacent to" a residential facility set forth in Section 1303.34(B). ZONING ORDINANCE §1303.34(B). The Zoning Ordinance is rationally related to a legitimate governmental purpose, and we will "not substitute our judgment for that of the [Township]." *Rice Family Trust*, 51 A.3d at 918. *See also Zangrilli v. Zoning Hearing Board of Borough of Dormont*, 692 A.2d 656 (Pa. Cmwlth. 1997) (lack of rational relationship to legitimate governmental purpose must be obvious in order for zoning ordinance to be found invalid). We hold that Landowners have failed to satisfy their "heavy burden of establishing [the] invalidity" of the Zoning Ordinance. *Kirk*, 713 A.2d at 1229.

## II. Variance

Landowners next argue that the Zoning Board denied them a full and fair opportunity to present their case in support of their variance request. They

maintain that they requested a dimensional variance, as opposed to a use variance to which "strict 'unnecessary hardship' standards" apply. Landowners Brief at 15.

In any case, Landowners argue that the Zoning Board rushed them through their presentation without taking any evidence on their variance request. Their legal memorandum was limited to the interpretation of the Zoning Ordinance and not to the variance request. The Zoning Board responds that "the Constitution does not require perfection at every stage of the adjudicatory process," and Landowners were afforded "ample opportunity" to present their case. Board Brief at 9-10.

## A. Nature of the Variance Request

The Zoning Ordinance sets forth the standards for obtaining relief from its requirements. Section 1805 states as follows:

> The [Zoning Board], upon appeal, shall have the power to authorize variances from the requirements of this chapter and to attach such conditions to the variance as it deems necessary to assure compliance with the purposes of this chapter. *A variance may be granted if all of the following findings are made*, where relevant in a given case:
>
> A. That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.
>
> B. That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

C. That such unnecessary hardship has not been created by the appellant.

D. That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

E. That the variance, if authorized, will represent the minimum variance necessary to afford relief and will represent the least modification possible of the regulation in issue.

ZONING ORDINANCE §1805 (emphasis added). Section 1805 of the Zoning Ordinance is nearly identical to Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[5] which authorizes a zoning hearing board's grant or denial of a variance. Unnecessary hardship requires evidence that: (1) the physical characteristics of the property are such that the property could not be used for any permitted purpose; (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance. *Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014).

Our Supreme Court has established that when evaluating unnecessary hardship in the context of a dimensional variance, courts may consider "the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). Further, the "quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance … is sought"

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1998, P.L. 1329, 53 P.S. §10910.2.

because "the grant of a dimensional variance is of lesser moment than the grant of a use variance, since [a use variance] involves a proposal to use the property in a manner that is wholly outside the zoning regulation." *Id*. at 47-48. Even so, *Hertzberg* did not remove the hardship requirements for a dimensional variance. *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1 (Pa. Cmwlth. 2015). It is still the case that "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011).

Landowners argue that the Zoning Board erred in treating their application as a use variance because a medical clinic is not "wholly outside the zoning regulation" but, rather, allowed as a conditional use in the R-3 District. *Hertzberg*, 721 A.2d at 48. They contend that their request for a variance is subject to the "less stringent standard" of *Hertzberg*. Landowners Brief at 15. The Zoning Board counters that Landowners "want to use the property for a purpose not permitted without conditions in the R-3 [D]istrict." Board Brief at 9.

This Court addressed the differences between a dimensional variance and a use variance in *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment for the City of Philadelphia*, 787 A.2d 1123 (Pa. Cmwlth. 2001). In that case, a railroad sought to erect a non-accessory, outdoor advertising sign on its property in an industrial district. Its zoning permit was denied because its proposed sign would exceed the permitted height; would be placed less than 500 feet from another sign and closer than 660 feet to a highway ramp; and would deviate from the requirement that only one sign support structure was permitted on the lot.

14

When the zoning board of adjustment granted the railroad a variance from these restrictions, objectors appealed, and the trial court reversed. In affirming the trial court, this Court observed that "a dimensional variance contemplates only a reasonable adjustment from area and space requirements in order to develop a *permitted* use." *Id.* at 1126 (emphasis in original). The zoning ordinance prohibited outdoor advertising unless the above-enumerated requirements were met, and those requirements could not be reasonably characterized as "dimensional." *Id.* at 1127. Thus, the variance application required the stricter review exacted in the case of a use variance.

We reached a similar conclusion in *Plumstead Township Board of Supervisors v. Plumstead Township Zoning Hearing Board* (Pa. Cmwlth., Nos. 1254 C.D. 2007, 1318 C.D. 2017, filed April 10, 2008) (unreported).[6] There, the landowner, who sought to build an office on a 1.5-acre lot, requested a variance from the forest preservation requirement. The zoning board granted the variance, reasoning that the standard "was dimensional in nature because it required a modification of a set number … as opposed to a modification of an outright prohibition of deforestation." *Id.,* slip op. at 4. This Court held otherwise. We concluded that the forest preservation requirement was not a dimensional standard because it was "substantially different in character from lot width, building area, setbacks and impervious surface limitations and that any departure from [the forest preservation requirement] must be made by means of a use variance." *Id.,* slip op. at 8. Accordingly, the zoning board erred in treating the variance as dimensional.

---

[6] Section 414(a) of the Commonwealth Court's Internal Operating Procedures states that an unreported panel decision of this Court may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code §69.414(a).

15

Here, Landowners have requested a variance from the conditions in Section 1303.34(B) of the Zoning Ordinance that require a medical clinic in the R-3 District "be established in conjunction with, part of and adjacent to an assisted living facility, independent living facility, life care community or nursing home." ZONING ORDINANCE §1303.34(B). Landowners do not seek a "reasonable adjustment from area and space requirements" but, rather, to use their property for a stand-alone medical clinic, which is prohibited by the Zoning Ordinance unless the requirements in Section 1303.34(B) are met. *Society Created to Reduce Urban Blight (SCRUB)*, 787 A.2d at 1126. The conditional language in Section 1303.34(B) has nothing to do with "lot width, building area, setbacks and impervious surface limitations." *Plumstead Township Board of Supervisors*, slip op. at 8. We conclude that Landowners' requested departure from the condition in Section 1303.34(B) of the Zoning Ordinance requires a use variance and affirm the Zoning Board's holding in this regard.

### B. Full and Fair Opportunity to be Heard

Finally, Landowners argue that the Zoning Board denied their request for a variance without taking any evidence. Section 1807.2(F) of the Zoning Ordinance provides that "[t]he parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." ZONING ORDINANCE §1807(2)(F). Landowners assert that they were denied the hearing guaranteed by Section 1807(2)(F).

Landowners filed two requests with the Zoning Board, one for an interpretation of the Zoning Ordinance and another for a variance to develop a

16

medical clinic on their property. The Zoning Board held a hearing on September 6, 2017, but it did not take testimony or evidence. Rather, it stated that it would first decide "whether the [O]rdinance needs an interpretation," on which testimony was not needed. Hearing Transcript at 31; R.R. 75a. Following the hearing, Landowners submitted a legal memorandum, which addressed their interpretation of the Zoning Ordinance but not their variance request. On October 4, 2017, the Zoning Board held another hearing, where it voted to uphold the Zoning Ordinance and deny Landowners' request for a variance.

The Zoning Board stated in its written decision that Landowners appeared with counsel and "offered testimony and exhibits," Board Decision at 3, Findings of Fact ¶6, and they "failed to demonstrate unnecessary hardship." *Id*. at 4, Conclusions of Law ¶8. To the contrary, the Zoning Board did not receive any testimony or evidence at any point prior to denying Landowners' request for a variance. This was error because Landowners are entitled to a full and fair opportunity to present their request for a variance, as guaranteed to them by Section 1807 of the Zoning Ordinance.

**Conclusion**

For the foregoing reasons, we affirm the trial court's holding that Landowners did not establish that the conditions for a medical clinic in an R-3 District set forth in Section 1303.34(B) of the Zoning Ordinance are invalid. However, because Landowners did not have the opportunity to present evidence in support of their variance request, we vacate the trial court's decision affirming the Zoning Board's denial of the variance. The matter shall be remanded to the Zoning

17

Board for additional hearings on the variance application using the standard for a use variance.

_____
MARY HANNAH LEAVITT, President Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dale DeAngelo and Lesley DeAngelo, :
                              Appellants :
                                        :
                                        :
              v.                        : No. 770 C.D. 2018
                                        :
North Strabane Township                 :
Zoning Hearing Board                    :

**O R D E R**

AND NOW, this 17th day of April, 2019, the order of the Court of Common Pleas of Washington County, dated May 10, 2018, in the above-captioned matter is AFFIRMED in part and VACATED in part, and this matter is REMANDED to the Court of Common Pleas of Washington County with instructions to further remand to the Zoning Hearing Board of North Strabane Township for additional proceedings to review the case using the appropriate standard for a use variance.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge