# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Conshohocken Borough | : | |
| | : | |
| v. | : | No. 501 C.D. 2020 |
| | : | Argued: March 15, 2021 |
| Conshohocken Borough | : | |
| Zoning Hearing Board | : | |
| | : | |
| Appeal of: Kris J. Waller | : | |
| and Lisa Rhodes | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
HONORABLE ANNE E. COVEY, Judge (P.)
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
PRESIDENT JUDGE BROBSON                    FILED:  August 16, 2021


Appellants Kris J. Waller and Lisa Rhodes (Neighbors) appeal from an order of the Court of Common Pleas of Montgomery County (Common Pleas), dated January 17, 2020, which reversed a decision by the Borough of Conshohocken (Borough) Zoning Hearing Board (ZHB), sustaining Neighbors' substantive validity challenge brought pursuant to Section 916.1 of the Pennsylvania Municipalities Planning Code (MPC).[1]   The ZHB concluded that the Borough's Zoning Ordinance 08-2017 (Zoning Amendment), which, in relevant part, revised the permitted uses in the Borough's Residential Office (RO) zoning district to include convenience retail food stores with the sale of fuel, constituted spot zoning.  We now reverse.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1.

## I. BACKGROUND

Provco Pineville Fayette, L.P. (Provco) is the equitable owner of a property (Property) located at 1109 and 1119 Fayette Street and 1201 Fayette Street in the Borough. Fayette Street is a four-lane highway. The Property includes multiple one- and two-story buildings. The Property is adjacent to a cemetery, and it is nearby to the Borough's Stadium and playing fields; various buildings for businesses, including a real estate office, a dry cleaning business, and a physical therapy business; and some residential properties. Neighbors reside near the Property, which is located within the RO zoning district.

In April 2014, Provco applied to the ZHB for a special exemption or, in the alternative, a variance to build a retail convenience store with gas pumps on the Property. Following twenty-eight days of hearings on Provco's zoning application between April 2014 and August 2016, the ZHB denied Provco's application for a special exemption or a variance.[2]

In August 2017, Provco sought an amendment to the Borough's Zoning Ordinance to provide additional permitted new uses, standards, and special regulations for the RO zoning district, including the permitted use of convenience retail stores that included fuel sales. On November 15, 2017, the Borough Council enacted the Zoning Amendment, which amended Part 12 of the Township's Zoning Ordinance, thereby adding the permitted use of "convenience retail food store[,] including the sale of fuel[,] an ATM[,] and lottery sales." (Reproduced Record (R.R.) at 588a.) That same night, Borough Council approved Land Development Resolution 2017-24, which was the preliminary/final land development plan for

---

[2] We note that the matter before us does not include the appeal of the ZHB's denial of Provco's application for a special exemption or a variance.

2

Provco to build a convenience store with fuel pumps on the Property in the newly revised RO zoning district.[3]  Neighbors, as intervenors, filed a substantive validity challenge to the Zoning Amendment on December 15, 2017.  Provco also intervened in the matter.

The ZHB held hearings on the substantive validity challenge, at which counsel for Neighbors, Provco, and the Borough presented evidence.  Neighbors testified on their own behalf and presented the testimony of Thomas Comitta, an expert in land planning, and nearby property owners, Clare Dorsey and David Rhodes.  Provco presented the testimony of Joseph Baran, an expert in civil engineering, and E. Van Rieker, an expert in municipal and developer planning.  The ZHB, in addition to hearing the testimony, admitted 26 documents into evidence at the hearings.  The parties were given the opportunity to make closing arguments to the ZHB on January 29, 2019, and, that same night, the ZHB, in a 3-2 decision, sustained Neighbors' substantive validity challenge and declared the Zoning Amendment void in its entirety.

The ZHB issued its written decision on March 11, 2019.  With regard to the Zoning Amendment itself, the ZHB found, in part:

---

[3] Neighbors filed an appeal in Common Pleas, challenging the approval of the Land Development Plan.  By order dated October 2, 2020, Common Pleas affirmed the Borough's passage of Resolution No. 2017-24, approving the Preliminary/Final Land Development Plan for Provco.  Neighbors have since appealed Common Pleas' decision to this Court, and the matter is docketed as *Clare M. Dorsey v. Borough Council of Conshohocken Borough*, No. 1114 C.D. 2020.  We note that this case is not part of the matter presently before this panel of the Court.

Neighbors also filed an appeal in Common Pleas, challenging the enactment of the Zoning Amendment on procedural grounds.  By order dated October 2, 2020, Common Pleas denied this appeal as well, concluding that the Zoning Amendment was procedurally valid.  Neighbors have since appealed Common Pleas' decision to this Court, and the matter is docketed at *Clare M. Dorsey v. Borough Council of Conshohocken Borough*, No. 1115 C.D. 2020.  We note that this case is also not part of the matter presently before this panel of the Court.

6.  [The Zoning Amendment] amended Chapter 27, "Zoning," Part 12 "R-O Residential Office District" to add to the "permitted uses" found i[n] Section 27-1202.

7.  Specifically, the additional "permitted uses" included:

> a.  Business offices, including, but not limited to, security and commodity brokerage, real estate sales, travel agency, employment counseling, insurance sales, advertising, mailing and stenographic services.
>
> b.  Professional office for the practice of medicine, law, engineering, architecture or design, real estate, insurance, or financial institution.
>
> c.  Retail establishment for the sale of dry goods, variety merchandise, clothing, food, baked goods, beverages, flowers, plants, drugs, hardware, books, and furnishings.
>
> d.  Restaurants, excluding drive-in or drive through.
>
> e.  Convenience retail food store, including the sale of fuel, an ATM, and lottery sales. No convenience retail store which provides for the sale of fuel shall be located within 1,000 feet of another convenience retail food store which provides for the sale of fuel.
>
> f.  Parking lots or garages, provided that they are secondary to the principal use.

. . . .

9. The previous Zoning Code did not identify convenience stores, including the sale of fuel, as a permitted use or a conditional use. Section 27-1203 of the previous code also identified as a conditional use, "Other uses of similar intensity and scale."

10.  The [Zoning Amendment] also added dimensional standards to the above uses and specifically provided for the dimensional standards for a convenience retail food store, including the sale of fuel, an ATM, and lottery sales.

11.  The [Neighbors] filed the Petition challenging the validity of [the Zoning Amendment] on the basis of, *inter alia*, spot zoning.

12. [Neighbors] further alleged in their petition that [the Zoning Amendment] only applies to one property within the [RO] Zoning District, that being the [Property], in which [Provco] has an equitable interest in.

(ZHB decision at 4-6.)

4

In its findings, the ZHB considered the testimony of Mr. Comitta, Neighbors' expert in land planning who had reviewed the previous Zoning Ordinance and the Zoning Amendment and prepared a report titled "Planner's Review and Critique of RO District Amendment and Related Plan, Borough of Conshohocken, Montgomery County." In finding of fact number 13, the ZHB, summarizing Mr. Comitta's testimony regarding the previous Zoning Ordinance and the Zoning Amendment, found:

f. [Mr. Comitta] stated that a Wawa convenience market with gas pumps would not have been permitted in the RO Zoning District pursuant to the previous Zoning Ordinance.

g. One of his concerns with the Zoning Amendment was how it derailed the front yard regulation that said no parking in the front yard. He also believes it derailed . . . encouraging retention and preservation of Victorian structures.

h. Most of the buildings in the RO Zoning District are between 18 to 25 feet from the curb and do not allow parking in the front yard. However, the Zoning [Amendment] allows setbacks from 25 to 30 feet and took away the prohibition of parking in the front yard.

i. The [Property] is the only piece of property in the RO District that could satisfy the requirements for a 250-foot lot width and the 40,000[-]square[-]foot minimum lot size. As such, the [Property] is the only property that could have a convenience store with fuel pumps and an ATM.

j. In order to construct a convenience store with fuel pumps and an ATM in other areas of the RO Zoning District you would need to demolish an existing structure to build the use, including Victorian structures, which is contrary to the declaration of legislative intent for the RO Zoning District, which seeks to "encourage the retention and preservation of existing Victorian and early 20th century residences."

k. Without demolishing any Victorian buildings and without assembling any parcels only the [Property] could construct the convenience market with fuel pumps.

l. The Zoning Amendment created a situation that is out of character with the residential scale and character of the Borough in the RO Zoning District.

m. A convenience market at the [Property] would violate several provisions of the existing RO Zoning District, including not maintaining the existing residential streetscape pursuant to Section 27-1201 [of the Zoning Code], and adding parking in the front yard.

n. The convenience market will dramatically change the character of Fayette Street's streetscape with lighting, traffic flow across pedestrian sidewalks, and parking in the front yard.

o. In the RO Zoning District there are 16 small office uses, one bank, one cleaner, nine personal service establishments, four restaurants, a deli, and a coffee shop. These uses are less impactful on their existing residential neighbors. They do not have 24-hour operations.

p. The proposed Wawa at the [Property] is out of character with the existing RO Zoning District.

(*Id.* at 6-8.)

In finding of fact number 13, the ZHB also considered Mr. Comitta's testimony regarding his agreement with the Montgomery County Planning Commission's views on the Zoning Amendment and found:

q. In preparing his report, [Mr. Comitta] also reviewed the review letter of the Montgomery County Planning Commission which concluded and recommended that the Zoning Amendment not be approved as it would not fit the character of this part of the Borough and would be inconsistent with the intent of the zoning district.

r. [Mr. Comitta] agrees with the conclusion of the County Planning Commission.

s. The Conshohocken Borough Planning Commission also recommended denial of the proposed Zoning Amendment.

t. [Mr. Comitta] also agrees with the conclusion of the Borough Planning Commission.

u. [Mr. Comitta] does not believe that the Zoning Amendment complies with the Statement of Community Development Objectives.

(*Id.* at 8.)

In finding of fact number 14, the ZHB, based on the cross-examination of Mr. Comitta by the Borough's attorney and Provco's attorney and on questions by the members of the ZHB, found:

6

a.  The neighborhood around the [Property] is primarily residential.

b.  The [Property] is adjacent to the Borough Stadium.  The four corners of 11ᵗʰ and Fayette are properties that have non-residential uses.  In addition to the stadium there is a dry cleaning store, a cemetery, and a real estate office on the other side of the cemetery.

c.  There is no existing Victorian or early 20ᵗʰ Century residence at the [Property].

d.  [Mr. Comitta] is aware that there are other gas stations on Fayette Street that have pumps in the front of the property.

e.  [Mr. Comitta] did not check whether the Borough has a lighting or noise ordinance.

f.  [Mr. Comitta] has driven on Fayette [S]treet "about a thousand times" but did not do any traffic counts.

g.  There is no other property in the RO Zoning District that could qualify to construct a convenience market with fuel pumps by-right.  A developer could ask the [ZHB] for variances from the lot width requirement.

h.  The Zoning Amendment did not add any property or take away any property from the RO Zoning District.

i.  The boundaries of the RO Zoning District did not change with the Zoning Amendment.

j.  The Zoning Amendment also added five other permitted uses including business office, professional office, retail, restaurant, and parking lot or garage.

k.  A build-to line is not required to be in a zoning ordinance.

l.  The Zoning Amendment did not change the lot size or the lot width of the [Property].

m.  There could potentially be some commercial uses that are not located in 20ᵗʰ Century or Victorian structures.

n.  There are no other properties that had a 250-foot width and a 40,000[-]square[-]foot lot area.  As such, [Mr. Comitta] believes that the [Zoning Amendment] is spot zoning as the [Property] is the only property that could comply with the Zoning Amendment to construct a convenience market with fuel pumps.

o.  There are a number of non-residential uses that are allowed in the RO Zoning District.

7

(*Id.* at 8-10.)

As to the testimony of Neighbors and Mrs. Dorsey, the ZHB issued similar findings for all three. Generally, the ZHB found that they live near the Property and have concerns that the presence of a convenience store with fuel sales on the Property will change their way of living or affect their quality of life due to crime, pollution, trash, gas odors, noise, lighting, and/or loitering. (*Id.* at 2, 10, 11, Finding of Fact (FF) Nos. 15-17.) Also, based on their testimony, the ZHB found that, while there are some commercial properties in the neighborhood, none of the businesses are open 24 hours a day or are noisy. (*Id.* at 10-11, FF Nos. 15-16.)

In finding of fact number 18, the ZHB considered the testimony of Mr. Baran, Provco's expert in civil engineering, and found, in part:

b. There are four commercial uses at the corner of 11th and Fayette Street.

c. There are currently sidewalks in front of the [Property].

d. [Mr. Baran] created a plan titled Existing Non-Conforming Commercial Use Exhibit which is two sheets. The[] exhibit shows how an assemblage of properties could meet or could not meet the requirements for a convenience store with fuel sales. His exhibit also identified the nonconforming commercial uses within the RO Zoning District.

(*Id.* at 11-12.)

Based on Mr. Baran's testimony on cross-examination and in response to questions from members of the ZHB, the ZHB found in finding of fact number 19:

a. [Mr. Baran] reviewed the [Z]oning [A]mendment and provided some input regarding the dimensional standards.

b. The assemblages of properties on his [E]xhibit PP-3 are properties that could meet the dimensional requirements of the [Zoning Amendment] to develop a convenience store with gas sales.

c. There are not any single lots that could be developed as a Wawa convenience store.

8

d. Some of the assemblages on his [E]xhibit PP-3 may contain a Victorian or early 20th Century residential structure.

e. If the [Property] was developed as a Wawa, there could not be any other property within the RO Zoning District that could be developed as another convenience retail store with fuel pumps.

f. It is common for development projects to consolidate lots to meet dimensional requirements.

g. If a development could not meet the dimensional requirements the developer could ask the [ZHB] for dimensional variances.

h. The [Property] is an assemblage of lots.

i. [Mr. Baran] believes that the [Property] has been operating as a Chevrolet Dealership, as a single land use, since the 1950s.

j. There are no convenience stores with gasoline sales in the RO Zoning District currently.

(*Id.* at 12-13.)

In finding of fact number 20, the ZHB considered the testimony of Mr. E. Van Rieker, Provco's expert in municipal and developer planning, and found, in part:

c. The [Zoning Amendment] does not change the RO Zoning District boundary.

d. The [Zoning Amendment] does not change the [Property] boundary.

e. The [Zoning Amendment] added a list of six permitted uses to the Original RO Zoning District.

f. The [Zoning Amendment] also provides dimensional requirements for permitted uses and separate standards for convenience food stores.

g. There is no obligation that the [Property] be developed as a convenience market with gas sales.

h. There are no prohibitions in the Ordinance on removing a Victorian or [e]arly 20th Century structure.

. . . .

k. Of the 66 properties [in the RO Zoning District], 24 percent were single family residential, 21 percent was [sic] multi-family residential, 52 percent was [sic] non[]conforming commercial, and the remaining three percent was [sic] other. In total, approximately 75 percent of the properties are not single family residential.

9

l. If the [Property] is not developed with [sic] as a convenience market with gasoline, there are other properties in the RO Zoning District that could be assembled to be developed with a convenience market with gasoline.

m. The [Property] does not have an early 20th Century or Victorian structure on it.

n. The Borough is one square mile which is 640 acres and the RO Zoning District is approximately 18 acres. The [Property] is 1.21 acres, which is nine percent of the RO Zoning District.

o. The Borough does have a lighting ordinance and a noise ordinance.

p. [Mr. Van Rieker] does not believe the Zoning [Amendment] creates spot zoning.

(*Id.* at 13-14.)

Based on Mr. Van Rieker's testimony on cross-examination and in response to questions from members of the ZHB, the ZHB found in finding of fact number 21:

a. [Mr. Van Rieker's] Exhibit PP-6 depicts land masses that could be assembled that would satisfy the dimensional requirements for a convenience market with gas sales.

b. Only one Wawa that sells gas could be built in the RO Zoning District.

c. For a property to receive conditional use approval [the property owner] would have to file an application with Borough Council for a conditional use.

d. If a property is a non[]conforming use in a district and then a conditional use standard is adopted, the property owner does not need to apply for a conditional use in order to continue operating.

e. The [MPC[4]] allows landowners to submit amendments to zoning ordinances.

f. The declaration of legislative intent for the RO Zoning District was not modified when the Zoning Amendment was adopted.

g. The Borough's Comprehensive Plan is silent [as] to the [Property] and nonconforming uses in the RO Zoning District.

h. The proposed Wawa at the [Property] would not be similar to other properties within the RO Zoning District, but it would be suitable.

---

[4] 53 P.S. §§ 10101-11202.

10

(*Id.* at 14-15.)

In finding of fact number 22, the ZHB considered the testimony of David Rhodes, a non-party neighbor who testified on behalf of Neighbors, and found, in part:

> b. After the last meeting, [Mr. Rhodes] reviewed Mr. Van Rieker's list to determine whether the properties were in fact non[]conforming and commercial.
>
> c. [Mr. Rhodes] determined that of the 34 structures listed as nonconforming commercial on Mr. Van Rieker's exhibit, 23 of them actually did have residences in addition to the business.
>
> d. Many of the properties have apartments upstairs.
>
> e. Approximately 80 percent of the properties in the RO Zoning District are either residential or mixed use.

(*Id.* at 15.)

Finally, the ZHB found that multiple members of the public offered public comment, much of which "focused on, *inter alia*, concerns with traffic, loitering, trash, [and their belief that] the proposed text amendment did not benefit the Borough." (*Id.* at 16, FF No. 23.)

The ZHB concluded that Neighbors successfully proved that the Zoning Amendment constituted arbitrary spot zoning and did not benefit the health, welfare, and safety of the community. (*Id.* at 17.) The ZHB focused on how the Zoning Amendment related to the Statement of Community Development Objectives. The ZHB observed:

> Section 27-105.A [of the Zoning Ordinance], titled "Growth," [provides], "Conshohocken Borough is a developed community with an established character that should be preserved. All future growth, whether by infilling of remaining vacant land or by redevelopment, should occur in an orderly and controlled manner that is consistent with the scale and character of the Borough."

11

(*Id.* at 18 (quoting Zoning Ordinance § 27-105.A).)  The ZHB also observed that Section 27-105.D of the Zoning Ordinance, titled "Commerce," provides that "future commercial development should respect surrounding residential neighborhoods.  In the Borough, commercial activities should mix with residential in certain areas such as Fayette Street and the redevelopment area."  (*Id.* (quoting Zoning Ordinance § 27-105.D).)  The ZHB also reviewed the Legislative Intent of the Residential Office District, set forth in Section 27-1201 of the Zoning Ordinance, which provides:

> In the expansion of the declaration of legislative intent . . . , the intent of the Residential Office District is to encourage the retention and preservation of existing Victorian and early 20th Century residences by permitting residential uses and conditionally allowing limited office conversions.  Furthermore, it is the intent . . . to maintain the existing residential streetscape of upper Fayette Street through regulations that allow these conversions only when the front facades and porches are preserved and if building additions and parking areas are not constructed in the front yards.

(*Id*. (quoting Zoning Ordinance § 27-1201).)  The ZHB explained that the Zoning Amendment "was contrary to the terms of both the Legislative Intent of the [RO] Zoning District and Objectives A and D of the Statement of Community Development Objectives." (*Id.* at 19.)

The ZHB also concluded that allowing a convenience store use with fueling pumps in the RO zoning district would be inconsistent with the scale and character of the other properties within the RO district. (*Id.*)  The ZHB reasoned that, "[w]hile the RO Zoning District contains a mix of residential and commercial properties, none of the offices, restaurants, or mixed[-]use properties are as intense as a convenience store with fueling pumps." (*Id.*)  The ZHB explained that it was

> swayed by the testimony of [Mr.] Comitta, especially when he stated that "all of the attributes in the [Zoning Amendment] are different to enable just the Wawa . . . its' [sic] a completely different use and

12

different character than what is typical in the Borough." Mr. Comitta's comments were echoed by [the non-party] neighbors and [Neighbors], who both testified that the retail convenience store with fuel pumps would change the residential character of the neighborhood.

(*Id.* at 19-20.) The ZHB, in concluding that the Zoning Amendment constituted arbitrary spot zoning, reasoned:

[I]t was intentionally designed to affect one lot or a small area for different treatment than that [sic] the similar surrounding land uses. The [Property], as it is currently configured, is the only property that could benefit from the Zoning Amendment. The specific dimensional standards in the Zoning Amendment point[] to only one viable location that could fulfill the dimensional standards. There are no other properties that could meet these specific dimensional standards without consolidating groups of properties. As Mr. Comitta stated, "there's no other place in the RO district to create another island."

(*Id.* at 20.) The ZHB sustained Neighbors' substantive validity challenge and declared the Zoning Amendment invalid. (*Id.* at 21.) The Borough and Provco appealed the decision to Common Pleas.

By order dated January 17, 2020, Common Pleas, without taking additional evidence, reversed the ZHB's decision. In its Pa. R.A.P. 1925(a) opinion, Common Pleas concluded that Neighbors did not meet their heavy burden of demonstrating that the Zoning Amendment is not constitutionally valid, because they failed to introduce evidence that clearly established the Zoning Amendment was spot zoning. This appeal followed.

## II. ISSUES

Neighbors raise two issues on appeal.[5] First, Neighbors argue that Common Pleas committed an error of law in applying a *de novo* standard of review to the

---

[5] When a court of common pleas does not take additional evidence in a substantive validity challenge to an ordinance, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or a manifest abuse of discretion. *Sowich v. Zoning Hearing Bd. of Brown Twp.*, 245 A.3d 1188, 1195 n.3 (Pa. Cmwlth. 2021) (citing *Valley*

13

ZHB's decision. Second, Neighbors contend that Common Pleas erred as a matter of law when it concluded that the Zoning Amendment did not constitute spot zoning.

### III. DISCUSSION

### A. Common Pleas' Standard of Review

Neighbors argue that Common Pleas exceeded its standard of review in reviewing the ZHB's decision because it used a *de novo* standard of review rather than an appellate standard of review. Neighbors also argue that Common Pleas "impermissibly substituted its own judgment for that of the [ZHB]" and ignored the ZHB's findings that the Zoning Amendment was the product of spot zoning and should be stricken in its entirety. (Neighbors' Brief at 21-22.) Neighbors submit that Common Pleas "failed to give [them] the benefit of reasonable inferences arising from the evidence" and focused instead "on discrediting the weight of the evidence supporting the ZHB's decision," including the testimony of various witnesses. (Neighbors' Brief at 22.) Neighbors argue that Common Pleas "made its own findings based on evidence before the ZHB when the record clearly shows that the ZHB made its determination in consideration of all the evidence before it." (*Id*.)

---

*View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983) (*Valley View*)). When the appeal presents a question of law our scope of review is plenary. *Stoltzfus v. Zoning Hearing Bd. of Eden Twp.*, 937 A.2d 548, 550 n.2 (Pa. Cmwlth. 2007), *appeal denied*, 953 A.2d 542 (Pa. 2008). A zoning hearing board abuses its discretion only when its findings are not supported by substantial evidence in the record. *Demko v. City of Pittsburgh Zoning Bd. of Adjustment,* 155 A.3d 1163, 1167 n.7 (Pa. Cmwlth. 2017); *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998). While we are bound by the zoning hearing board's determinations on credibility and evidentiary weight, we must conduct an independent review of the record to determine whether the zoning hearing board's findings of fact are supported by substantial evidence. *Wyomissing Area Sch. Dist. v. Zoning Hearing Bd. of Wyomissing Borough*, 128 A.3d 851, 855 n.2 (Pa. Cmwlth. 2015), *appeal denied*, 141 A.3d 484 (Pa. 2016).

14

The Borough and Provco counter that Neighbors' "displeasure with [Common Pleas'] holding does not legitimize their claim that [Common Pleas] applied a *de novo* standard of review." (Borough's and Provco's Brief at 8.) The Borough and Provco submit that Common Pleas, based on the record, "determined that the ZHB ignored Pennsylvania law and reached a decision that was not supported by substantial evidence . . . [and that Common Pleas] applied the correct standard of review in holding that the ZHB abused its discretion when it sustained the substantive validity challenge." (Borough's and Provco's Brief at 9.) Significantly, all parties agree that Common Pleas did not take additional evidence after the ZHB rendered its decision. (Neighbors' Brief at 21; Borough's and Provco's Brief at 2.)

This Court recently reviewed a similar argument that a court of common pleas "exceeded its scope of review because, although it did not take additional evidence, it referenced in its decision statements of the attorneys and/or testimony contained in the record that were not part of the [Zoning Board of Adjustment's (ZBA)] findings of fact, thereby essentially making its own factual findings." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020). Without directly addressing the argument, we explained:

> Regardless of whether [c]ommon [p]leas may have exceeded its scope of review, we are mindful of our role in this matter. Our role, here, given that [c]ommon [p]leas did not take additional evidence in the zoning appeal, is limited to reviewing the ZBA's decision, not that of [c]ommon [p]leas. In other words, we will consider whether [the] ZBA—not [c]ommon [p]leas—erred as a matter of law or abused its discretion. Thus, we do not need to consider whether [c]ommon [p]leas exceeded its scope of review in referencing statements made during the proceedings that were not encompassed in the findings of the ZBA. Nor do we have to consider whether such error, if it occurred, constitutes harmless error. Instead, we will consider the issues now before this Court in the context of the ZBA's decision—not the decision of [c]ommon [p]leas.

*Id.* (citing *Singer v. Philadelphia Zoning Bd. of Adjustment*, 29 A.3d 144, 148 n.1 (Pa. Cmwlth. 2011)).  The same rationale applies in this case, and we will, therefore, review the ZHB's decision (rather than Common Pleas' decision) based on the record using the error of law or abuse of discretion standard of review.

## B.  Spot Zoning

The law is clear that spot zoning is unconstitutional and invalid.  *Lower Allen Citizens Action Grp., Inc. v. Lower Allen Twp. Zoning Hearing Bd.*, 500 A.2d 1253, 1260 (Pa. Cmwlth. 1985).  The law is equally clear that all zoning ordinances are presumed constitutional and valid.  *Atherton Dev. Co. v. Twp. of Ferguson*, 29 A.3d 1197, 1204 (Pa. Cmwlth. 2011).  The burden thus falls on the challenger to prove otherwise.  *Id.*  In *Takacs v. Indian Lake Borough Zoning Hearing Board*, 11 A.3d 587 (Pa. Cmwlth. 2010), we explained spot zoning and the relevant legal standard, as follows:

> Spot zoning is a singling out of one lot or a small area for *different treatment from that accorded to similar surrounding land indistinguishable from it in character*, for the economic benefit or detriment of the owner of that lot. *The most determinative factor in an analysis of spot zoning is whether the parcel in question is being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences from its neighbors*.

> To establish improper spot zoning, the challenger must prove that the provisions at issue are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare.  If the validity of a zoning ordinance is debatable, it must be permitted to stand.  Spot zoning cases should be decided on the facts, guided by case law; there is no precise formula for determining whether a rezoning of property constitutes spot zoning.

*Takacs*, 11 A.3d at 594 (citations omitted) (emphasis added); *see also Sharp v. Zoning Hearing Bd. of Twp. of Radnor*, 628 A.2d 1223, 1228 (Pa. Cmwlth.) (holding there is no precise formula to determine spot zoning; whether classification

16

constitutes spot zoning is determined by facts and guided by case law), *appeal denied*, 637 A.2d 290 (Pa. 1993). Thus, a challenger in a spot zoning case first must demonstrate that a governing body's rezoning reflects a difference in treatment of a tract of land from surrounding land similar in character.

### 1. Difference in Treatment of the Property

The Pennsylvania Supreme Court has held that a factor to consider in determining whether a property is spot zoned is to review how the property and zoning at issue relates to the government entity's comprehensive zoning plan. *See Schubach v. Silver*, 336 A.2d 328, 338 (Pa. 1975); *see also Knight v. Lynn Twp. Zoning Hearing Bd.*, 568 A.2d 1372, 1375 (Pa. Cmwlth. 1990). The Pennsylvania Supreme Court has stated:

> Zoning is the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner *in accordance with a comprehensive plan.*

*French v. Zoning Bd. of Adjustment*, 184 A.2d 791, 792 (Pa. 1962) (quoting *Best v. Zoning Bd. of Adjustment*, 141 A.2d 606, 609 (Pa. 1958) (emphasis in original)). "[T]o promote the orderly development of a community the zoning authorities must be allowed to put a piece of property to the use which is most beneficial to the comprehensive plan, *i.e.*, establish a land use which best blends in with surrounding different uses." *Schubach*, 336 A.2d at 338.

The ZHB recognized that the Borough's Zoning Ordinance does not prohibit the removal of a Victorian or early 20th Century structure. (ZHB decision at 13.) The ZHB, however, considered the Borough's Statement of Community Objectives and its guidance that redevelopment should occur in an orderly and controlled fashion, and the Borough's established character should be preserved. (*Id.* at 18 (citing Zoning Ordinance § 27-105.A).) The ZHB recognized that

17

Section 27-105.D of the Zoning Ordinance, titled "Commerce," provides that "future commercial development should respect surrounding residential neighborhoods." (*Id*. (quoting Zoning Ordinance § 27-105.D).) In the Borough, "commercial activities should mix with residential in certain areas such as Fayette Street and the redevelopment area." (*Id.* (quoting Zoning Ordinance § 27-105.D).)

The ZHB also reviewed the Legislative Intent of the Residential Office District, set forth in Section 27-1201 of the Zoning Ordinance, to encourage the retention and preservation of "Victorian and early 20th Century residences" and "maintain[ing] the existing residential streetscape of upper Fayette Street through regulations that allow these conversions only when the front facades and porches are preserved and if building additions and parking areas are not constructed in the front yards." (*Id*. (quoting Zoning Ordinance § 27-1201).) The declaration of Legislative Intent for the RO zoning district was not modified at the time of the Zoning Amendment's adoption. (*Id*. at 15.) The ZHB explained that the Zoning Amendment "was contrary to the terms of both the Legislative Intent of the [RO] Zoning District and Objectives A and D of the Statement of Community Development Objectives." (*Id*. at 19.) Based on our review of the record, we conclude that the ZHB neither committed an error of law nor abused its discretion in relying on the Borough's statements of policy in reaching its spot zoning conclusion.

Next, the ZHB heard testimony at the hearings from three expert witnesses and four non-expert witnesses and admitted 28 documents into evidence, from which it gleaned the following findings of fact. The Borough is one square mile, which is a total of 640 acres; the RO zoning district is approximately 18 acres; and the Property is 1.21 acres, which accounts for nine percent of the RO zoning district.

18

(ZHB Decision at 14.) Within the RO zoning district there are sixteen small office uses, including one bank, one cleaner, nine personal service establishments, four restaurants, a deli, and a coffee shop. (*Id*. at 8.) Eighty percent of the properties in the RO zoning district are either residential or mixed use. (*Id*. at 15.)

The Property is an assemblage of lots. (*Id*. at 12.) The neighborhood around the Property is primarily residential. (*Id*. at 9.) A convenience market with gas pumps would not have been permitted in the RO zoning district pursuant to the previous Zoning Ordinance. (*Id*. at 6.) The Property does not have a Victorian or early 20th Century structure on it. (*Id*. at 14.) There are no convenience stores with gasoline sales in the RO zoning district, and if the Property was developed as such, no other property within 1,000 feet of the new store could be developed as another convenience store with fuel pumps. (*Id*. at 12-13.) The Property is the only piece of property in the RO zoning district that could satisfy the requirements for a 250-foot lot width and the 40,000-square-foot minimum lot size, and, as such, it is the only property that could have a convenience store with fuel pumps and an ATM. (*Id*. at 7.) In order to construct a convenience store with pumps and an ATM in other areas of the RO zoning district, one would need to demolish existing structures, including Victorian structures, which is contrary to the declaration of legislative intent for the RO zoning district. (*Id*.)

In the RO zoning district, the buildings are between 18 to 25 feet from the curb and do not allow parking in the front; however, the Zoning Amendment allows setbacks from 25 to 30 feet and removed the prohibition of parking in the front yard. (*Id*. at 7.) A convenience market at the Property would violate several provisions of the existing RO zoning district, including not maintaining the existing residential streetscape pursuant to Section 27-1201 of the Zoning Ordinance, and adding

19

parking in the front yard. (*Id.*) The Zoning Amendment created a situation that is out of character with the residential scale and character of the Borough in the RO zoning district. (*Id.*) The proposed convenience store with fuel pumps would dramatically change the character of Fayette Street's streetscape with lighting, traffic flow across pedestrian sidewalks, and parking in the front yard. (*Id.* at 8.) Accordingly, based on our review of the record, we believe the ZHB's conclusion that the Zoning Amendment reflects a difference in treatment of the Property from surrounding land similar in character was not an error of law.

## 2. Relation to Public Health, Safety, Morals, and General Welfare

Next, for the Property to be considered spot zoned, Neighbors also must prove that the provisions at issue are arbitrary and unreasonable and that they have no relation to the public health, safety, morals, and general welfare. As this Court has previously held:

> To determine if these factors are met, Pennsylvania Courts use a substantive due process analysis balancing the public interest served by the zoning ordinance against the confiscatory or exclusionary impact of the regulation on individual rights. In other words, we must examine the reasonableness of the restriction on land use in light of the deprivation of the landowner's freedom thereby incurred.

*Penn St., L.P. v. E. Lampeter Twp. Zoning Hearing Bd.*, 84 A.3d 1114, 1134 (Pa. Cmwlth.), *appeal denied*, 99 A.3d 708 (Pa. 2014) (citations omitted). "An ordinance will be found unreasonable and not substantially related to a police power purpose if it is shown to be unduly restrictive or exclusionary." *C&M Dev. v. Bedminster Twp. Zoning Hearing Bd.*, 820 A.2d 143, 151 (Pa. 2002). Additionally, "an ordinance will be deemed arbitrary where it is shown that it results in disparate treatment of similar landowners without a reasonable basis for such disparate treatment." *C&M Dev.*, 820 A.2d at 151.

20

With this legal background in mind, we emphasize that "[i]t is the function of a zoning hearing board to weigh the evidence before it" and the "board is the sole judge of the credibility of witnesses and the weight afforded their testimony." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth.) (citations omitted), *appeal denied*, 887 A.2d 1243 (Pa. 2005). A zoning hearing board is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness, and it does not abuse its discretion by choosing to believe the opinion of one expert over that offered by another. *Id.*

Our role in this appeal is limited to determining whether the ZHB's findings of fact provided "substantial evidence" in the form of relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *DeAngelo v. N. Strabane Twp. Zoning Hearing Bd.*, 208 A.3d 156, 161 n.3 (Pa. Cmwlth. 2019) (citing *Valley View*, 462 A.2d at 640). With regard to substantial evidence, our Supreme Court has explained:

> Information admitted into evidence must have sufficient indicia of reliability and be relevant to the matter under consideration. Accordingly, to test whether the evidence relied upon is substantial evidence in support of a finding, the reviewing court should ascertain whether the evidence admitted is competent, and if it is competent, whether it is sufficient to support the administrative finding. If the evidence is both competent and sufficient, the finding is supported by substantial evidence.

*Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Products)*, 861 A.2d 938, 944 (Pa. 2004) (*Gibson*).

The Borough and Provco argue that because Neighbors "only offered their own personal opinions, and not substantial evidence related to the public health, safety, morals and general welfare," Common Pleas' decision should be affirmed. (Borough's and Provco's Brief at 17.) Neighbors counter that, based on the

21

testimony of its expert witness, Mr. Comitta, the ZHB properly found that the Property did not benefit the health, welfare, and safety of the community. Neighbors further argue:

> [I]t is unfathomable that the main argument made by [the Borough] and [Provco] for an ordinance that permits a Wawa convenience store with gas pumps in only one location in the [RO zoning district] is not subject to testimony and evidence offered by neighbors of the property as to the character of their neighborhood, the land uses in their neighborhood and the substantial changes wrought by the Provco [Zoning Amendment] to the benefit of no one but Provco.

(Neighbors' Reply Brief at 5-6.)

Before discussing the merits of the respective arguments, a brief overview regarding witnesses will help clarify the parties' positions. Our Supreme Court has explained:

> The distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the in the field. At law, every person is competent to be a witness unless otherwise provided by statute or by the Rules of Evidence. However, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Therefore, if the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences that are within the personal knowledge of the witness and can assist the trier of fact to obtain a clear understanding or determination of a fact in issue.

*Gibson*, 861 A.2d at 945 (citations and quotations omitted).

We recognize in the case before us that neither Neighbors nor Mrs. Dorsey were deemed "expert witnesses" in a particular field. Yet, even as lay witnesses, they could provide the ZHB with testimony based on their opinions and inferences to aid the ZHB in determining issues of fact. There is nothing in the record to

indicate that Neighbors and Mrs. Dorsey were not competent to testify and all three testified under oath or affirmation. The ZHB found that Neighbors and Mrs. Dorsey all owned property near the Property (two for over twenty years) and that they all had personal knowledge of the neighborhood and the types of commercial businesses in the neighborhood. (ZHB Decision at 10-11, FF Nos. 15-17.) Their testimony included opinions and inferences, resulting from a process of reasoning familiar in everyday life, on topics within the realm of a layperson; specifically, about: (1) how a convenience store with gasoline sales would change their way of living, or affect their quality of life due to crime, pollution, trash, gas odors, noise, lighting, and/or loitering; and (2) how none of the current businesses in the neighborhood are open 24 hours a day. (*Id.* at 2, 10, 11, FF Nos. 15-17.) Consequently, their testimony was relevant evidence to the issue of the Zoning Amendment's effect on the Borough's public health, safety, morals, and general welfare.[6]

We conclude that the ZHB acted within its power as the sole judge of the credibility of the witnesses and the weight afforded to their testimony. It is not an abuse of discretion for the ZHB to accord more weight to the expert testimony of Mr. Comitta over the other two experts who testified in the case. Similarly, the ZHB did not err when it considered Neighbors' and Mrs. Dorsey's testimony about how a convenience store, with the sale of gasoline would affect the Borough's public health, safety, morals, and general welfare. The ZHB's conclusion that the Zoning Amendment constituted arbitrary spot zoning rests on the solid foundation of the substantial evidence in its findings of fact. Accordingly, the ZHB neither committed

---

[6] ZHB also found that "[m]ultiple members of the public offered public comment . . . focused on, *inter alia*, concerns with traffic, loitering, trash, [and their belief that] the proposed text amendment did not benefit the Borough." (ZHB Decision at 16, FF No. 23.)

23

an error of law nor a manifest abuse of discretion in reaching its decision that the Property was spot zoned.

## IV. CONCLUSION

Accordingly, we reverse the Common Pleas' order.

_____
P. KEVIN BROBSON, President Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Conshohocken Borough | : | |
| | : | |
| v. | : | No. 501 C.D. 2020 |
| | : | |
| Conshohocken Borough | : | |
| Zoning Hearing Board | : | |
| | : | |
| Appeal of: Kris J. Waller | : | |
| and Lisa Rhodes | : | |

# **O R D E R**

AND NOW, this 16th day of August, 2021, the order of the Court of Common Pleas of Montgomery County is REVERSED.

_____
P. KEVIN BROBSON, President Judge